UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL PLAZA JR., : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 24-cv-5943 |
| : | |
| LANCASTER COUNTY : | |
| COMMISSIONERS, *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

**Joseph F. Leeson, Jr.**                                                       **February 5, 2025**
**United States District Judge**

      Joel Plaza, Jr., a prisoner in custody at SCI Phoenix, filed this civil rights action against two unnamed Lancaster County Commissioners, the Lancaster County Prison ("LCP"), its warden and numerous LCP employees.[1] All individual Defendants are named in both their individual and official capacities. Plaza also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Plaza leave to proceed *in forma pauperis* and dismiss many of the claims he asserts in the Complaint. Because some of the claims are dismissed without prejudice, the Fourteenth Amendment deliberate medical indifference claims against Defendants John Doe #7 and #8 will not be dismissed at this time. Plaza may file an amended complaint as to the claims dismissed without prejudice or to identify John Doe #7 and/or John Doe #8.

---

[1] The named Defendants are Lancaster County Commissioners John Doe and John Doe #2; LCP Warden Steberger (spelling corrected); Norberto Sotomyer; Grievance Coordinator John Doe #3 (Steven); Corrections Officer John Doe #4; Sergeant John Doe #5; Lieutenant John Doe #6; medical coordinators John Doe #7 and John Doe #8; Lead Grievance Coordinator Jane Doe #1; and "Lancaster County Jail." (Compl. ¶¶ 6-13, ECF No. 2).

I.  **FACTUAL ALLEGATIONS**[2]

Plaza alleges that on April 28, 2023, he was preparing to take a shower when he noticed that Defendant Sotomyer, a Counselor at Lancaster County Prison, "watched [him] until he reached the shower area." (Compl. ¶ 16.) While Plaza was in the shower, he "noticed the shower curtain being pulled open and saw Counselor Norberto Sotomyer . . . peering into plaintiff's shower and commenting on plaintiff's genitals." (*Id*. ¶ 19). Plaza was alarmed, ended the shower, and later reported the incident to John Does #4 (a corrections officer), #5 (a sergeant), and # 6 (a lieutenant), asking for them to reprimand Sotomyer and to provide Plaza with "mental/physical health intervention." (*Id*. ¶¶ 9, 21-23).

Plaza also filed a grievance about the incident, which was denied. (*Id*. ¶¶ 24, 26). He specifically requested to be moved from Unit #3-1, where Sotomyer worked, but John Does #4, #5, and #6 "consistently denied" his requests, with the approval of their superiors, and "told [Plaza] to get back in his cell." (*Id*. ¶ 40). John Doe #3 conducted an investigation of Plaza's allegations, including interviewing him and viewing the surveillance video footage of the incident, but "denied [Plaza] any relief." (*Id*. ¶¶ 31-32, 50-51).

Shortly after Plaza reported the incident, John Does #4 and #5 "engage[d] in a pattern of belittling, berating, and speaking in a condescending manner" to him. (*Id*. ¶¶ 33-34). The harassment by these officers, and their supervisors' failure to stop it, "served to promote the harassment and physical assault of plaintiff by other inmates . . ." (*Id*. ¶ 56).

On an unspecified date after the April 28, 2023 incident, Plaza "sought medical and psychological intervention and care" and specifically advised John Does #7 and #8 that he was

---

[2]  The factual allegations set forth in this Memorandum are taken from the Complaint (ECF No. 2). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

"suicidal[,] suffering from feelings of harming himself as a direct result of the sexual assault/harassment incident . . ." (*Id.* ¶¶ 42-43). Despite multiple requests for assistance, these Defendants "took no action and failed to provide any medical/mental health care, and/or specialized assistance." (*Id.* ¶ 44.) As a result, Plaza alleges he "continues to suffer from PTSD, anxiety, stress, lack of sleep, [and] feelings of fear specifically when having to shower." (*Id.* ¶ 46).

Liberally construed, Plaza asserts various claims against Defendants under the First and Fourteenth Amendments, as well as state law claims for negligence and assault and battery. (*See id.* ¶¶ 55-59.) As relief, he seeks a declaratory judgment that his rights have been violated, and compensatory and punitive damages. (*Id.* at pp. 14-15.)

## II.  STANDARD OF REVIEW

The Court grants Plaza leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015))

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Plaza is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.     DISCUSSION

Plaza asserts constitutional claims under the First and Fourteenth Amendments.[3]  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A.     Official Capacity Claims

Plaza sues employees of Lancaster County in both their individual and official capacities.  (Compl. ¶¶ 6-13.)  Claims against municipal officials named in their official capacity are indistinguishable from claims against the municipality.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc.*

---

[3]     The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  While Plaza cites the Eighth Amendment as a basis for his claims, publicly available court records indicate that he was a pretrial detainee when the events described in the Complaint occurred.  *See Commonwealth v. Plaza*, CP-36-CR-0002792-2022 (C.P. Lancaster).  Accordingly, his claims will be construed under the Fourteenth Amendment.

*Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Plaza has not alleged in the Complaint that any County policies were the moving force behind his constitutional injuries.  To the extent he believes he can allege a plausible municipal liability claim, he may do so by filing an amended Complaint.

**B.     Claims for Retrospective Declaratory Relief**

Declaratory relief is unavailable to adjudicate past conduct, so Plaza's request for a declaration that his rights have been violated in the past is improper and will be dismissed with

prejudice.[4] *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

    **C.    Lack of Personal Involvement**

Plaza names as Defendants Superintendent Steberger and two unnamed Lancaster County Commissioners, but asserts no allegations in the body of his Complaint about how each of these people were personally involved in the incidents he describes. For this reason, the claims against them are not plausible.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)

---

[4] This Court finds that it would be futile to allow leave to amend any of the claims dismissed herein with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (holding that a *pro se* plaintiff should normally be given an opportunity to file a curative amendment, but leave to amend need not be granted where an "amendment would be inequitable or futile").

("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The claims against Warden Steberger and John Doe #1 and #2 will be dismissed; however, Plaza will be permitted an opportunity to file an amended complaint to describe how these individuals were involved with his claims.[5]

### D. Claim Against LCP

Plaza names LCP as a defendant in the caption of the Complaint. The § 1983 claim against LCP is dismissed with prejudice because a jail is not a "person" under Section 1983. *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976).

### E. Sexual Abuse/Harassment

Plaza asserts a sexual abuse/harassment claim against Defendant Sotomyer. Sexual abuse and harassment can violate an inmate's constitutional rights. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution"); *Alberti v. Klevenhagen*, 790 F. 2d 1220, 1224 (5th Cir. 1986) ("The same conditions of violence and sexual abuse which

---

[5] If Plaza files an amended complaint and names multiple John or Jane Doe defendants, he should be careful to specify which unknown defendant he refers to in any given allegation so that each unknown person's role in the incident is clear. He may do so by listing the John or Jane Does by number, being careful to ensure that the role of that numbered person is consistent and differentiated from other numbered persons. Plaza is on notice, however, that without the name of at least one named individual or entity, the Court may be unable to direct service of any amended complaint that he may file.

constitute cruel and unusual punishment may also render the confinement of pretrial detainees punishment per se."); *Chin v. Warfel*, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) ("Because it appears from the complaint that Mr. Chin is a pretrial detainee, the Court analyzes his conditions of confinement claim under the Fourteenth Amendment."). Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components. *Ricks*, 891 F. 3d at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"); *Chin*, 2024 WL 665536, at *4. Regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm." *Ricks* 891 F. 3d at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Regarding the objective prong, the Court considers whether the action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." *Id*. at 475-76 (citations omitted). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

A claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. *Ricks*, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual *contact*.") (emphasis added); *Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); *Chin* , 2024 WL 665536, at *4 ("Mr. Chin alleges only that Sgt. Fischer made an inappropriate gesture and verbal

8

comments. Because he does not allege any sexual contact by Sgt. Fischer, his claim based on sexual abuse is not plausible and will be dismissed with prejudice."); *McCain v. Wetzel*, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)); *Chin*, 2024 WL 665536, at *4 (applying the same standard to case brought by pretrial detainee).

Plaza does not allege that Defendant Sotomyer engaged in any physical contact with him. Rather, he asserts only that Sotomyer watched Plaza as he entered the shower area, then pulled back the shower curtain while Plaza was showering and made comments about his genitals. (Compl. at 5 ¶¶ 16-19.) While Sotomyer's conduct was improper, because it did not involve any physical contact, it does not rise to the level of a constitutional violation. Accordingly, Plaza's Fourteenth Amendment sexual abuse claim against Sotomyer will be dismissed with prejudice.

F.   **Failure to Protect Claims**

Plaza asserts failure to protect claims against Jane Doe #1, Warden Steberger, John Doe #3, John Doe #4, John Doe #5, and John Doe #6 based on (1) their failure to discipline Sotomyer; and (2) their failure to move Plaza to another housing unit away from Defendant Sotomyer. To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective

9

component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

For a failure to protect claim against a prison official to be plausible, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) (applying deliberate indifference standard to failure to protect claims brought by pretrial detainees); see also *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (same), *abrogation on other grounds recognized by Fisher*, 115 F.4th 197. Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

To the extent Plaza's claim is predicated on the failure to take disciplinary action against Sotomyer, the claim fails because Plaza does not identify any cognizable harm that resulted from Defendants' inaction. Plaza alleges vaguely that Defendants' "failure to take any action . . . served to promote the harassment and physical assault of [him] by other inmates." (Compl. at 13, ¶ 56.) Beyond this conclusory statement, however, the Complaint lacks any detailed allegation of a physical assault, or facts to support a causal connection to Defendants' inaction.

10

This bare conclusory allegation is undeveloped and insufficient to state a plausible constitutional claim. *See Iqbal*, 556 U.S. at 678.

Alternatively, Plaza implies that Defendants' inaction has caused him to suffer psychological harm based on apprehension of further stalking by Sotomyer. (Compl. ¶ 56.) He also contends that Defendants failed to protect him from "a pattern of harassment, belittlement, berating." (*Id.* ¶ 39.)[6] However, "in a failure to protect claim, it is the failure to protect from actual physical injury, not the failure to protect from the fear of injury, that violates the [constitution]." *Weir v. Smith*, No. 20-127, 2021 WL 11698080, at *3 (W.D. Pa. Apr. 22, 2021) (citations omitted), *report and recommendation adopted*, No. 20-127, 2021 WL 11698081 (W.D. Pa. Oct. 26, 2021) (internal citation omitted.) Failure to protect from "acts of verbal harassment and taunting alone cannot qualify as constitutional violations." *See Cessna v. Lewis*, No. 3:14-CV-0361, 2015 U.S. Dist. LEXIS 35683, at *24 (M.D. Pa. Mar. 23, 2015). Accordingly, Plaza's Fourteenth Amendment failure to protect claim, which alleges no more than a psychological injury and verbal harassment, fails to state a plausible claim.

The Complaint also asserts that Defendants John Doe #4, John Doe #5, John Doe #6, and Warden Steberger had the authority to move Plaza from Unit #3-1, where the April 28, 2023 incident occurred, to "another more secure Unit in the Jail for purpose of protecting plaintiff and ensuring his health and safety were cared for," but they denied Plaza's repeated requests to do so. (Compl. ¶¶ 30, 40.) In refusing his requests, Plaza contends these Defendants violated his constitutional rights.[7] Plaza's claim is not plausible because the Complaint does not allege facts

---

[6] The underlying claim that the Defendants' harassment violated his rights is discussed below as a First Amendment retaliation claim.

[7] Plaza seemingly recognizes that prisoners have no inherent constitutional right to placement in any particular prison or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will

11

stating that failure to move Plaza posed a serious risk to his health or safety, that any Defendant was subjectively aware of such a risk, or that Plaza suffered any cognizable harm as a result of Defendants' inaction. *See Carter v. Lawler*, 446 F. App'x 420, 423 (3d Cir. 2011) (*per curiam*) (finding that the corrections officers were not deliberately indifferent to excessive risk of harm to prisoner because officers had no prior knowledge or warning that the prisoner would be involved in an altercation with the other inmate). The Complaint does not specify any harm that resulted from the failure to transfer Plaza. To the extent Plaza asserts that Defendants' inaction caused him anxiety that he would be subject to further improper conduct by Sotomyer or caused him to experience verbal harassment, as noted above, mere anxiety about potential harm and verbal harassment are not a basis for a cognizable failure to protect claim. *See Weir*, 2021 WL 11698080 at *3. Accordingly, Plaza's failure to protect claims will be dismissed, but the Court will grant leave to amend if Plaza is able to allege additional facts to cure these defects.

### G.    Claims Based on Grievances

Plaza asserts that in "failing to uphold his grievance" regarding the April 28, 2023 incident Defendants Steberger, Jane Doe #1, and John Does #3, 4, 5, and 6 violated his constitutional rights. (Compl. ¶ 57). This claim is not plausible because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)); *see Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations

---

be incarcerated in any particular prison within a State."); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("A state has broad authority to confine and inmate in any of its institutions.").

12

linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). Accordingly, allegations such as those raised by Plaza predicated on failures of various Defendants to sustain or properly investigate his grievances and appeals do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). The claims are dismissed with prejudice.

### H. Denial of Medical Care

Liberally construed, Plaza alleges claims for denial of medical care against John Does #7 and #8. Plaza submitted requests to these Defendants indicating he was experiencing suicidal ideation "as a direct result of the [April 28, 2023] sexual assault/harassment incident" but John Does #7 and #8 denied him any care or counseling. (Compl. ¶ 43).

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835, 837 (holding that a prison official is not

13

deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *see also Natale*, 318 F.3d at 581 (applying same standard to pretrial detainees' claims for inadequate medical care). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). "A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016). To state a constitutional claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences "(1) that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference,

meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017).

Plaza alleges that despite advising John Does #7 and #8 of his suicidal ideation, they did not provide him with any psychiatric care. It is well-settled that a "particular vulnerability to suicide" represents a "serious medical need" to which prison officials may not be deliberately indifferent. *See Palakovic*, 854 F.3d at 222. Accepting the allegations in the Complaint as true that John Does #7 and #8 took no action in response to Plaza's report of suicidal thoughts, Plaza adequately establishes a Fourteenth Amendment deliberate medical indifference claim sufficient to pass statutory screening.

However, Plaza is advised that he may not pursue a claim solely against these unnamed Defendants because more than ninety (90) days have passed since the filing of his complaint and he has yet to identify either defendant. *See Breeland v. Wexford Health Care Servs.*, No. 17-281, 2019 U.S. Dist. LEXIS 5881, at *2 (W.D. Pa. Jan. 14, 2019) ("When an unnamed defendant is not identified and served 'within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.'" (quoting Fed. R. Civ. P. 4(m)). If Plaza is able to state a cognizable claim in an amended pleading against a named defendant, he may also pursue his deliberate indifference to medical care claim against John Does #7 and #8. *Accord Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990) (holding that where there are named parties in the action, the unnamed defendants must be identified by the close of discovery or they will be dismissed). Alternatively, Plaza must identify John Doe #7 or John Doe #8 by name because the action may not continue against unnamed defendants only.

I.      **First Amendment Retaliation**

Plaza alleges that after he filed a grievance regarding the April 28, 2023 incident, John Does #4 and #5 "engage[d] in a pattern of demeaning, berating, and sexually explicit harassment, in retaliation for" complaining about Sotomyer's sexual harassment.  (Compl. ¶ 52).  The Court understands Plaza to be attempting to assert a First Amendment retaliation claim.  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.").  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See Watson*, 834 F.3d at 422.

Plaza's grievance regarding the April 28, 2023 incident is constitutionally protected conduct.  *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318

16

F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)).  However, "[i]t is well-settled . . . that verbal harassment or threats, even if acted upon, do not constitute adverse action for purposes of establishing a First Amendment retaliation claim."  *Muhammad v. Brown*, No. 23-212, 2024 WL 3540991, at *4 (M.D. Pa. July 25, 2024) (citing cases).  Furthermore, Plaza fails to establish the necessary causal link between the filing of a grievance and the alleged act of retaliation.  *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim."); *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (*per curiam*) ("Thomas' claims against Dr. Ahner consist of conclusory and somewhat cryptic allegations that Dr. Ahner took Thomas off medication, directed others to do the same, and ordered others to create an extreme and stressful prison environment in retaliation for his 2001 lawsuit.  The complaint lacks all detail as to the time, place, or manner surrounding the alleged deprivation and it is entirely unclear from the allegations what level of involvement, if any, Dr. Ahner had in Thomas' care").  Because Plaza does not allege that he suffered anything other than verbal "belittling, berating [and] condescending" remarks the First Amendment retaliation claim is dismissed with prejudice.[8]

---

[8]  In the absence of any adverse action, the Court finds that it would be futile to allow Plazs leave to amend his retaliation claim to attempt to show a causal link.  To the extent Plaza alleges a due process claim based on the verbal harassment described here, he similarly fails to state a claim.  Verbal threats or taunts, without more, are insufficient to violate the Constitution.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding that threats that an inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a

17

J.      **Assault and Battery**

In the Relief Requested section of the Complaint, Plaza asserts that the conduct of Defendants Sotomyer, Warden Steinberger, Jane Doe #1, John Doe #3, John Doe #4, John Doe #5, and John Doe #6 also constitutes an assault and battery under state law.[9]  (*See* Compl. at pp. 14-15.)  "Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'" *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670–71 (E.D. Pa. 2017) (citation omitted.)  "The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established." *Id*. (citation omitted.)  An assault can be described as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery."  *Id*.  (citation omitted.)  "In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur."  *Id*.

As noted above, there is no allegation in the Complaint that Defendant Sotomyer had any physical contact with Plaza, thus the Complaint fails to allege a plausible claim for battery.  Nor does the Complaint contain any allegation that Sotomyer "intended to put [Plaza] in reasonable apprehension of an immediate battery" or that he "succeed[ed] in causing [Plaza] an apprehension" of such physical touching.  *Martin-McFarlane*, 299 F. Supp 3d. at 670-71.  Instead, Plaza alleges only that Sotomyer pulled back the shower curtain while he was showering

---

prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  Accordingly, this claim will also be dismissed.

[9]      The Complaint also makes a passing reference to a state law claim for negligence against unspecified Defendants.  (Compl. at 2.)  Because this claim is entirely undeveloped, it is not plausible.

and made sexual comments. While Sotomyer allegedly invaded the area where Plaza was showering, this is insufficient to state a claim that he put Plaza in apprehension of a battery.

Plaza's claims against the other Defendants are even less plausible. He contends that their "fail[ure] to take any action to curb or cease the abuse of plaintiff by staff and fellow inmates [or to] protect plaintiff from further abuse, sexual and retaliatory . . . [constituted] 'assault and battery' under state law." (Compl. ¶ 2.) This conduct neither involves direct physical contact nor apprehension of an *immediate* battery, as necessary to allege a plausible claim for assault and battery. *See Martin-McFarlane*, 299 F. Supp 3d. at 670-71. Accordingly, to the extent Plaza intended to assert a separate claim for assault and battery against Defendants Warden Steberger, Jane Doe #1, John Doe #3, John Doe #4, John Doe #5, and John Doe #6, the claim is dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated, the Court will not dismiss Plaza's deliberate medical indifference claim against Defendants John Doe #7 and John Doe #8 at this time, but will dismiss the remaining claims. Plaintiff's claims for retrospective declaratory relief, sexual abuse claim, First Amendment retaliation claim, claim against Lancaster County Prison, claims based on his grievances, and his state law assault and battery claim are dismissed with prejudice.[10] Plaza will be afforded an opportunity to file an amended complaint if he is capable of correcting the defects the Court has identified in his official capacity claim against Lancaster County, claims against LCP supervisors and Lancaster County Commissioners, failure to protect claims, or to identify either John Doe #7 or John Doe #8.

---

[10] The order that will be entered will direct the Clerk of Court to terminate the following Defendants who are only involved with the claims that are dismissed with prejudice: Lancaster County Jail and Norberto Sotomyer.

19

An appropriate Order with additional information about amendment will be entered separately.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**

20